FILED
COURT OF APPEALS DI 1
STATE OF WASHINGTON

2013 AUG 26 AM 9: 06

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 68558-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL C. RICH, JR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 26, 2013 |
| | ) | |

LAU, J. — Michael Rich appeals his conviction of felony driving under the influence (DUI), contending that (1) the trial court erred in granting his request to represent himself and (2) insufficient evidence exists to support each alternative means of committing DUI. He also asserts other grounds for reversal and sentencing errors. Because Rich established that his right to counsel was not knowingly and intelligently waived and insufficient evidence exists to support the alternative means, we reverse and remand for retrial.

## FACTS

Around 10 p.m. on November 21, 2010, Wendy Pullen watched Rich drive slowly off the road and into a shallow ditch. Pullen telephoned her aunt, who lived in a nearby

house. Pullen's uncle, David LaCount, went outside to investigate. He saw Rich in the driver's seat and a female in the passenger seat with a beer can between her legs. Rich exited the car and announced that his uncle was coming to tow the car. LaCount later testified, "[A]s soon as [Rich] got out of the car all I smelled was beer." Verbatim Report of Proceedings (VRP) (Feb. 28, 2012) at 58.

LaCount asked Rich, "Are you drunk?" VRP (Feb. 28, 2012) at 59. Rich pointed to the female passenger, chuckled, and said, "She's my designated driver." VRP (Feb. 28, 2012) at 59. Skagit County Sheriff's Deputy Robert Bearden contacted Rich. Deputy Bearden, who testified he received advanced DUI investigation training, noticed that Rich stumbled when he walked. When asked for his identification, Rich handed Deputy Bearden an identification card and a casino club card. Deputy Bearden testified, "While Mr. Rich was standing in front of me, about two feet in front of me, I could smell the odor of the consumption of alcohol coming from his breath and person. I also observed that when he spoke he had slurred speech, bloodshot watery eyes." VRP (Feb. 28, 2012) at 89. Rich admitted to driving the car but refused to undergo field sobriety testing.

Deputy Bearden arrested Rich on suspicion of DUI. During a pat-down search incident to arrest, Deputy Bearden found a "glass marijuana-style pipe" that smelled of burnt marijuana. VRP (Feb. 28, 2012) at 92. Meanwhile, a Washington State Patrol trooper arrived with a canine unit. The canine detected no evidence of narcotics in Rich's car. Deputy Bearden transported Rich to the Skagit County Jail. There, Rich

waived his <u>Miranda</u> rights.[1] Deputy Bearden advised Rich that he was under arrest for DUI and asked him to consent to a breath test. Rich refused the test.

The State charged Rich with felony DUI and gross misdemeanor first degree driving while license suspended (DWLS). The trial court granted Rich's request to represent himself and appointed standby counsel. The State later dismissed the DWLS charge and proceeded to trial on the felony DUI charge. After the jury returned a guilty verdict, the court sentenced Rich to 5 years of confinement and 12 months of community custody. Rich appeals.

## ANALYSIS

Rich challenges his felony DUI conviction, arguing (1) invalid waiver of his right to counsel, (2) insufficient evidence to support the alleged alternative means of committing DUI, (3) failure to prove the element of four or more prior DUI convictions, (4) prosecutor misconduct in closing argument, (5) offender scoring error, and (6) sentence exceeds statutory maximum.

### Waiver of the Right to Counsel

Rich contends his waiver was invalid because the "trial court employed an abbreviated colloquy and granted the pro se request by use of an incorrect written pro se waiver form at the prosecutor's request, which affirmatively misadvised Mr. Rich of the charges he faced and the maximum penalty." Br. of Appellant at 10.

A criminal defendant has a constitutional right to self-representation. <u>Faretta v. California</u>, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); WASH. CONST.

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

art. I, § 22 (amend. 10). Waiver of this right must be knowing, voluntary, and intelligent. City of Bellevue v. Acrey, 103 Wn.2d 203, 208-09, 691 P.2d 957 (1984). On appeal, the burden of proof rests with the defendant to show that his right to counsel was not competently, knowingly, and intelligently waived. State v. Hahn, 106 Wn.2d 885, 901, 726 P.2d 25 (1986). Improper acceptance of a defendant's waiver request constitutes reversible error. State v. Madsen, 168 Wn.2d 496, 503, 229 P.3d 714 (2010); see also United States v. Arlt, 41 F.3d 516, 521 (9th Cir. 1994).

In State v. DeWeese, 117 Wn.2d 369, 816 P.2d 1 (1991), the court held that a trial court must establish that a defendant, in choosing to represent himself, makes a knowing and intelligent waiver of the right to counsel. "We approach the question of whether [the defendant's] waiver was knowing and intelligent with caution, recognizing the serious nature of the inquiry and the [United States] Supreme Court's admonition that 'courts indulge in every reasonable presumption against waiver.'" Arlt, 41 F.3d at 520 (quoting Brewer v. Williams, 430 U.S. 387, 404, 97 S. Ct. 1232, 1242, 51 L. Ed. 2d 424 (1977)). Self-representation is a grave undertaking, one not to be encouraged, and courts should indulge in every reasonable presumption against waiver. Brewer, 430 U.S. at 404; DeWeese, 117 Wn.2d at 379.

"We review a trial court's grant of a defendant's self-representation request for an abuse of discretion." State v. James, 138 Wn. App. 628, 636, 158 P.3d 102 (2007). "A trial court abuses its discretion if its 'decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons.'" James, 138 Wn. App. at 636 (citation omitted) (quoting State v. Vermillion, 112 Wn. App. 844, 855, 51 P.3d 188 (2002)).

-4-

To determine the validity of a purported waiver, the trial court should hold a colloquy on the record that, at a minimum, informs the defendant of (1) the nature and classification of the charge, (2) the maximum penalty upon conviction, and (3) that technical rules will bind the defendant in the presentation of his or her case. Acrey, 103 Wn.2d at 211. Absent a colloquy, the record "must somehow otherwise show that the defendant understood the seriousness of the charges and knew the possible maximum penalty." Acrey, 103 Wn.2d at 211; see also Madsen, 168 Wn.2d at 504 n.2 ("A colloquy is unnecessary if there are independent, identifiable facts that show whether the request is voluntary, knowing, and intelligent.").

The court's duty to inform the defendant of the nature and classification of the charge and maximum penalty upon conviction includes a duty to warn of the potential for an exceptional sentence. In State v. Silva, 108 Wn. App. 536, 31 P.3d 729 (2001), the defendant represented himself at trial on charges of forgery, theft, and possession of stolen property. Although he proved to be a skilled litigator, we concluded his waiver of the right to counsel was invalid. The record showed he knew about each crime's standard sentencing range but not the court's authority to impose consecutive sentences. We concluded this information was "essential to assess the risk of proceeding without the assistance of counsel . . . ." Silva, 108 Wn. App. at 542. We reversed the defendant's convictions, holding he "was not advised of the maximum penalty for the crimes with which he was charged . . . ." Silva, 108 Wn. App. at 538.

Here, the trial court's brief colloquy was inadequate as a matter of law. The court asked Rich about his educational background, familiarity with the rules of evidence, motivation for self-representation, and understanding that the judge would not assist

him at trial. But it never informed Rich about the nature and classification of the charged crimes or the maximum penalty upon conviction. The court never told Rich he was charged with both felony DUI and first degree DWLS, a gross misdemeanor.[2] And it never advised him about the potential for consecutive sentences if convicted of both charges. The court's brief exchange fails to meet the minimal requirements laid out in Acrey.

The State acknowledges the colloquy's inadequacy. Relying principally on a written waiver form signed by Rich before the colloquy, it argues "the record as a whole reflects that Rich was aware of the possible penal consequences of conviction." Res't's Br. at 8. The waiver form contained several preprinted questions with adjacent blank spaces for the defendant's handwritten responses.[3] We quote the relevant questions below, with Rich's responses underlined:

4. Do you realize that you are currently charged with _Yes_?

_____

[2] Before the waiver of right to counsel colloquy, the deputy prosecutor advised the court, "The charges are felony DUI involving a license suspended . . . ." VRP (Aug. 24, 2011) at 3. The prosecutor also told the court, "I have actually a waiver [of] right to counsel form that I was provided from another county, which is based on [the] colloquy from the Federal Bench guidelines or Federal Judges Book that is referenced in [State v. Christensen, 40 Wn. App. 290, 698 P.2d 1069 (1985)]." VRP (Aug. 24, 2011) at 3. We note that the following underscored portions from the Christensen colloquy are omitted from the waiver of right to counsel form used here:

"3. You realize, do you not, that you are charged with these crimes:
"(Here state the crimes with which the defendant is charged.)
"4. You realize, do you not, that if you are found guilty of the crime charged in Count I the Court could sentence you to as much as ____ years in prison and fine you as much as $_____?
"(Then ask him a similar question with respect to each other crime with which he may be charged in the indictment or information.)"

Christensen, 40 Wn. App. at 296 n.2 (quoting 1 Bench Book for United States District Court Judges (Federal Judicial Center, November 1979)).

[3] Defense counsel handwrote Rich's responses because Rich was in handcuffs.

> 5.     Do you realize that the maximum penalty for  Yes: 5 years  is confinement in a state correctional institution for a term of  5 years  years [sic], or by a fine in an amount fixed by the court of  $10,000  or by such fine and confinement?  Yes .

As questions 4 and 5 show, the waiver form never indicated the charges Rich faced. The waiver form also affirmatively misadvised Rich about the maximum penalty upon conviction of the two offenses. It informed him that he faced a maximum penalty of five years of confinement and a $10,000 fine instead of six years of confinement and a $15,000 fine.[4]

The State contends Rich knew his maximum penalty upon conviction because the information at his arraignment revealed this information. This contention is unpersuasive. In State v. Modica, 136 Wn. App. 434, 149 P.3d 446 (2006), we held, "[T]he proper inquiry in determining the 'knowing' waiver of a right to counsel is the state of mind and knowledge of the defendant at the time the waiver is made." Modica, 136 Wn. App. at 445 (emphasis added).

Finally, relying on State v. Sinclair, 46 Wn. App. 433, 730 P.2d 742 (1986), the State claims Rich must have known his maximum penalty upon conviction, given his "extensive criminal history for both felonies and gross misdemeanors." Resp't's Br. at 9. In Sinclair, we held that a burglary defendant validly waived his right to counsel even though the trial court "failed to specifically inform him of the maximum penalty upon conviction . . . ." Sinclair, 46 Wn. App. at 438. We reasoned that because the defendant had "several prior convictions, including three for burglary, one as recent as

---

[4] At the time of the offense, first degree DWLS carried a maximum penalty of one year of confinement and a $5,000 fine. Former RCW 46.20.342(1)(a) (2010); former RCW 9.92.020 (1982). The felony DUI is punishable by five years of confinement and a $10,000 fine.

-7-

1980 [approximately three years before the waiver date]," he was "well aware of the possible consequences of another conviction." Sinclair, 46 Wn. App. at 438-39. Sinclair is inapposite. Unlike in Sinclair, the present case involves an inadequate colloquy and affirmative misrepresentations involving the potential maximum penalty upon conviction.

The State also argues that harmless error applies because Rich was properly informed about the maximum penalty for the only charge tried to verdict—felony DUI. This argument fails because an invalid waiver of the right to counsel never constitutes harmless error. Silva, 108 Wn. App. at 542 ("It is fundamental that 'deprivation of the right to counsel is so inconsistent with the right to a fair trial that it can never be treated as harmless error.'") (quoting Frazer v. United States, 18 F.3d 778, 782 (9th Cir. 1994)); Modica, 136 Wn. App. at 445 (waiver evaluated with reference to the defendant's state of mind and knowledge at the time of waiver). The meager colloquy here and affirmative misadvisement involving the maximum possible penalty for the charged crimes deprived Rich of critical information necessary to make a knowledgeable waiver of his constitutional right to counsel. We therefore reverse and remand for new trial.

### Alternative Means

Rich also contends that lack of sufficient evidence to support each of the alternative means warrants reversal of his conviction.

"Criminal defendants in Washington have a right to a unanimous jury verdict." State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). But when the trial court instructs the jury on alternative means of committing a crime, unanimity is not required if (1) sufficient evidence supports each alternative on which evidence or

argument was presented or (2) evidence and argument were presented on one alternative only. State v. Lobe, 140 Wn. App. 897, 905, 167 P.3d 627 (2007); State v. Smith, 159 Wn.2d 778, 783, 154 P.3d 873 (2007). When reviewing the record for sufficiency of the evidence, we ask "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found sufficient evidence to justify that conclusion beyond a reasonable doubt.'" State v. Davis, 175 Wn.2d 287, 346, 290 P.3d 43 (2012) (quoting State v. Yates, 161 Wn.2d 714, 786, 168 P.3d 359 (2007)). We draw all reasonable inferences in favor of the State and interpret them most strongly against the defendant. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Driving under the influence is an alternative means crime, subject to review for sufficient evidence when alternative means of commission are presented to the jury. State v. Shabel, 95 Wn. App. 469, 473, 976 P.2d 153 (1999).

Instruction 10 informed the jury that to convict Rich of felony DUI, the State must prove beyond a reasonable doubt that "the defendant at the time of driving a motor vehicle (a) was under the influence of or affected by intoxicating liquor or a drug; or (b) was under the combined influence of or affected by intoxicating liquor and a drug . . . ." (Emphasis added.) The State argued both alternatives during its closing argument. Referring to instruction 10, the prosecutor stated:

> Element Number 2, the Defendant at the time of driving a motor vehicle was A, under the influence of or affected by intoxicating liquor or drug or B, was under the combined influence or affected by intoxicating liquor and a drug. We don't know much about drugs. All we know is that a marijuana pipe with burnt residue was found on Mr. Rich's person when he was arrested. We don't know if that was a factor in this, but it's evidence you can consider. We don't know.

VRP (Feb. 29, 2012) at 52 (emphasis added). Later, the prosecutor argued that Rich's slurred speech on the night of the arrest was "further evidence that Mr. Rich was, in fact, affected by his alcohol consumption and possibly drug consumption." VRP (Feb. 29, 2012) at 58 (emphasis added).

Rich challenges the "combined influence" alternative. He argues the State presented insufficient evidence to prove he was under the influence of or affected by any substance other than beer.

As the State acknowledged in its closing argument, the marijuana pipe found on Rich is the only evidence of drug use. Although Deputy Bearden testified that the pipe smelled of burnt marijuana and contained marijuana residue, he never tested the residue to verify his suspicion. Rich testified that he and his passenger shared a 22-ounce can of beer but never testified to ingesting marijuana. LaCount and Deputy Bearden described Rich as smelling like beer or alcohol. Deputy Bearden never attributed Rich's slurred speech and bloodshot, watery eyes to marijuana use. A canine search revealed no drugs inside Rich's car.

Even viewing the evidence in the light most favorable to the State, there is no record evidence to support the alternative means that Rich was under the combined influence or effect of alcohol and marijuana. We conclude this deficiency violated Rich's constitutional right to a unanimous jury verdict. We reverse and remand for a new trial.

Because Rich's remaining claims are likely to arise on remand, we address them below.[5]

Prior Offenses

Rich contends the trial court erred in admitting evidence of a May 2009 DUI conviction. He argues the conviction did not qualify as a statutory "prior offense" for purposes of elevating his DUI offense to a felony.

The trial court instructed the jury that to convict Rich of felony DUI, it must find beyond a reasonable doubt "[t]hat at the time of the arrest the defendant had been previously convicted of four or more prior offenses within ten years . . . ." A separate instruction defined "prior offense" as "[a] conviction for a violation of RCW 46.61.502, Driving Under the Influence, or an equivalent local ordinance . . . ." The instruction also defined "prior offense" as "[a] conviction for a violation of . . . [RCW] 46.61.500, Reckless Driving . . . or an equivalent local ordinance, if the conviction is the result of a charge that was originally filed as a violation of RCW 46.61.502, Driving Under the Influence . . . ." These instructions accurately paraphrased the statutory definitions in RCW 46.61.5055(14)(a).

Whether an offense is a "prior offense" under RCW 46.61.5055(14)(a) "is not an element of the crime but a threshold question of law for the court to decide." State v. Chambers, 157 Wn. App. 465, 479, 237 P.3d 352 (2010). "As such, the trial court must determine [the] 'applicability' of a prior offense." Chambers, 157 Wn. App. at 479. Only

---

[5] In view of our decision, we need not address Rich's argument claiming prosecutorial misconduct in closing argument based on the State's "previous five times" remark. VRP (Feb. 29, 2012) at 57. We trust that error will not be repeated on retrial.

-11-

prior offenses that meet the statutory definition are admissible as predicate offenses elevating a DUI to a felony. Chambers, 157 Wn. App. at 479.

The trial court admitted Exhibits 7 through 10, which provided evidence of five prior offenses—four DUI offenses and one reckless driving conviction that was originally charged as a DUI. For the first time on appeal, Rich argues the DUI conviction identified in exhibit 7 is not a statutory "prior offense" because the exhibit identified the offense as "DWI." He acknowledges that "DWI" was likely synonymous with "DUI" but claims the trial court should have required the State to lay additional foundation establishing that a "DWI" conviction was truly a statutory "prior offense"—i.e., either a DUI conviction under RCW 46.61.502 or a violation of an equivalent local ordinance.[6]

Rich waived this argument when he failed to raise it below. Under RAP 2.5(a), we "may refuse to review any claim of error which was not raised in the trial court." In any event, this claim fails. In addition to the judgment identifying the "DWI" offense, exhibit 7 contained a certified copy of the underlying citation. The citation alleged that Rich committed the offense of "DRIVING UNDER THE INFLUENCE," in violation of RCW 46.61.502. Ex. 7. The citation makes clear that the "DWI" conviction was in substance a prior DUI offense.

Rich next argues that the State failed to prove beyond a reasonable doubt that he was the person who committed the prior offenses. In essence, this argument challenges the sufficiency of the evidence supporting the State's proof of four or more prior offenses.

---

[6] Rich also challenges the admissibility of the prior reckless driving conviction identified in exhibit 8. This challenge merits no analysis.

In State v. Huber, 129 Wn. App. 499, 119 P.2d 388 (2005), Division Two of this court held, "[W]hen criminal liability depends on the accused's being the person to whom a document pertains . . . the State must do more than authenticate and admit the document; it also must show beyond a reasonable doubt 'that the person named therein is the same person on trial.'" Huber, 129 Wn. App. at 502 (quoting State v. Kelly, 52 Wn.2d 676, 678, 328 P.2d 362 (1958)). To satisfy this obligation, the State cannot rely on an "identity of names alone." Huber, 129 Wn. App. at 502 (quoting United States v. Jackson, 368 F.3d 59, 63 (2d Cir. 2004)). Rather, it must show by evidence independent of the document "that the person named therein is the defendant in the present action." Huber, 129 Wn. App. at 502. Among other things, independent evidence may include "the location, time frame, and similarity of the prior offenses and the name of the defendant in each judgment . . . ." State v. Santos, 163 Wn. App. 780, 784, 260 P.3d 982 (2011). It may also include evidence of the defendant's "address, birth date, or criminal history." Santos, 163 Wn. App. at 784.

The State presented evidence independent of exhibits 7 through 10 that Rich committed the offenses identified in those exhibits. Each exhibit contained a certified copy of a judgment. In turn, each judgment referred to a unique citation number.[7] Certified copies of the corresponding citations were attached to each judgment. Each citation alleged an offense occurring within Skagit County. And each citation identified the alleged offender as a green-eyed, brown-haired, white male named "Michael C. Rich." Each indicated the offender was born on February 26, 1987. The State also introduced a color copy of Rich's state identification card. Like the citations, the

---

[7] Exhibit 9 contained two judgments, each reciting a separate citation number.

identification card indicated Rich was a green-eyed, brown-haired, white male named "Michael Christian Rich." The card also listed Rich's birth date as February 26, 1987. During the State's direct-examination, Deputy Bearden testified that the physical description in the identification card was consistent with his observations on the night he arrested Rich. He then testified that the identifying information in Exhibits 7 through 10 matched the corresponding information in the card.

Viewed in the light most favorable to the State, the record contains sufficient evidence for a rational trier to find beyond a reasonable doubt that Rich had four or more statutory prior offenses. By linking each of the five judgments to the corresponding citations, and by linking the citations to Rich through the identification card and Deputy Bearden's testimony, the State proved Rich's offenses using more than "identity of names alone." Huber, 129 Wn. App. at 502. This claim fails.

Rich argues that even if the State adequately proved four or more prior offenses, reversal is required because "the prosecutor did not elect in closing argument which four, from among the five proffered convictions, should be relied on by the jury to find the 'prior offenses' element of Felony DUI proved." Br. of Appellant at 32. He acknowledges he failed to raise this argument below. Nonetheless, he claims it is reviewable under RAP 2.5(a)(3) as a manifest error affecting a constitutional right.

Rich demonstrates no manifest error. The trial court properly instructed the jury that felony DUI requires proof beyond a reasonable doubt of "four or more prior offenses within ten years . . . ." RCW 46.61.502(6)(a); see Chambers, 157 Wn. App. at 481 (prosecution must prove existence of prior offenses beyond a reasonable doubt). Rich cites no authority holding that the jury must unanimously choose exactly four offenses

-14-

when finding this element proved beyond a reasonable doubt. His reliance on State v. Petrich, 101 Wn.2d 566, 683 P.2d 173 (1984), is misplaced. Petrich requires a unanimity instruction or a prosecutorial election when the State relies on multiple distinct acts as evidence of a single charged offense. Petrich, 101 Wn.2d at 572. Petrich does not apply when the State offers more than four prior convictions to prove a felony DUI. Because Rich fails to demonstrate manifest error affecting a constitutional right, we decline to review his untimely challenge.

Offender Score

Rich next argues the trial court miscalculated his offender score by including full points, instead of half points, for his juvenile offenses. He cites nothing in the record showing that the court, in fact, misscored his juvenile convictions as full-point offenses.[8] And even if we assume the court misscored the juvenile offenses, Rich fails to explain whether recalculation of his offender score based on half-point juvenile offenses yields a different sentence on remand. See In re Pers. Restraint of Rowland, 149 Wn. App. 496, 508, 204 P.3d 953 (2009) ("When a sentencing court incorrectly calculates the standard range before imposing an exceptional sentence, remand is the remedy unless the record clearly indicates the sentencing court would have imposed the same sentence anyway."). This challenge fails for inadequate briefing. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (argument unsupported by reference to the record or citation to authority will not be considered).

---

[8] Rich's citation to "CP 15" is unhelpful and likely resulted from a typographical error. Br. of Appellant at 42. Rich cites nothing in the sentencing transcript demonstrating that the trial court factored his juvenile offenses into his offender score.

Rich also claims the court miscalculated his offender score because the 2005 convictions for assault and robbery encompass the same criminal conduct. Rich cites nothing in the record showing that the prior sentencing court found these convictions encompassed the same criminal conduct. Though he believes this court can retroactively make the required finding, no authority exists for that proposition. See State v. Anderson, 92 Wn. App 54, 62, 960 P.3d 975 (1998) (treating absence of a finding regarding same criminal conduct as an implicit determination that offenses did not constitute the same criminal conduct).

Statutory Maximum

Rich argues the trial court erred in imposing a statutory maximum 60 months of confinement, plus 12 months of community custody. The State properly concedes the court imposed a combined sentence that exceeded the statutory maximum. RCW 9.94A.701(9); see State v. Boyd, 174 Wn.2d 470, 473, 275 P.3d 321 (2012).

## CONCLUSION

For the reasons discussed above, the invalid waiver of Rich's right to counsel and the constitutional violation of his right to a unanimous jury verdict require reversal and remand for new trial.

WE CONCUR: